UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOFO, INC.

Plaintiff,

-against-

CHENGLE WANG, TOO EXPRESS NJ LLC, TINGGO INC., and COPALITH GROUP INC.

Defendants.

Case No.

**COMPLAINT**

Plaintiff, Gofo, Inc. ("Plaintiff," "Gofo," or the "Company"), by and through its undersigned attorneys, as for their Complaint against defendants Chengle Wang ("Defendant" or "Wang"), Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc. (the "Corporate Defendants" and together, with Wang, the "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' unauthorized acquisition, retention, and disclosure of Gofo's trade secrets and confidential proprietary information, in direct violation of Wang's legal obligations to his former employer, Gofo,

2. Wang was a former high-level management employee of Gofo, and served as the Company's Network Expansion Director from December 2, 2024 through June 11, 2025. Gofo terminated Wang's employment when it discovered that Wang was engaged in a self-dealing, illegal kickback scheme, where Wang recommended third party delivery service providers ("DSPs") to Gofo and received kickbacks from the DSPs prior to or once they began business with Gofo.

3. Plaintiff brings this action against Defendants for their violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., common law misappropriation of Gofo's confidential information and trade secrets, and breach of contract.

## PARTIES

4. Plaintiff Gofo is a New York corporation with significant business operations nationwide and maintains an office in Queens County, New York.

5. Upon information and belief, Defendant Chengle Wang is a citizen of Queens County, New York.

6. Upon information and belief, Too Express NJ LLC is a New Jersey limited liability company that is controlled by Wang.

7. Upon information and belief, Tinggo Inc. is a New Jersey corporation that is controlled by Wang.

8. Upon information and belief, Copalith Group Inc. is a New York corporation that is controlled by Wang.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction under 28 U.S.C. § 1331 based upon federal question jurisdiction because one of the claims asserted in this case is brought under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. The trade secrets at issue relate to Gofo's products, services, and information that are developed, marketed, and used in interstate and foreign commerce.

10. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because all claims are related and form part of the same case and controversy.

11. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this proceeding occurred in this jurisdiction, and Gofo maintains operations and offices in Queens County, New York.

## FACTUAL ALLEGATIONS

12. Gofo provides premier last-mile parcel delivery services by leveraging advanced technology, real-time tracking, and optimized routing to ensure reliable, cost-efficient parcel deliveries.

13. Since its inception, Gofo has been developing and expanding its service coverage across the United States and Puerto Rico, particularly in high-density cities across key regions including New York, New Jersey, Atlanta, Chicago, Los Angeles, and Miami. Gofo currently provides services in forty-seven different states, which are divided into six different service regions.

14. Gofo's business model requires first establishing central hubs and sorting centers in major cities across different states, and subsequently opening parcel transfer centers and terminal delivery stations in surrounding cities and areas.

15. To perform its delivery services and ensure warehouse labor needs, Gofo contracts with DSPs across all operational regions. As the Network Expansion Director at Gofo, Wang played a major role in Network Expansion and Local Development as well as Operation Management, and was specifically responsible for the following:

a. Network Expansion and Local Development

i. Plan and execute the expansion of the Company's operational network, including identifying and developing new cities and zip codes for service;

ii. Analyze market opportunities and provide strategic recommendations for establishing local delivery networks;

iii. Build relationships with local stakeholders and authorities to facilitate smooth entry into new areas;

iv. Conduct feasibility studies and assessments to ensure the viability of new operational locations; and

v. Monitor and evaluate the success of network expansions, adjusting strategies as needed to achieve desired outcomes.

b. <u>Operation Management</u>

i. Generate reports related to business transactions and operational efficiency

ii. Conduct root-cause analysis of failures and take corrective actions;

iii. Manage compliance, quality control, and quality assurance standards and specifications;

iv. Develop key performance goals and manage the performance of staff;

v. Lead daily control meetings, identify issues and actions to be taken;

vi. Oversee large projects and interpret performance reports;

vii. Manage the budget and monitor the financial health of U.S. or business unit;

viii. Review current operational practices on a monthly basis and recommend actionable changes or improvements;

ix. Assist the Company with warehouse location selection, automation equipment selections, and site planning, and provide professional opinions;

x. Offer insights into industry trends and help the Company anticipate and adapt to changes in the last-mile delivery market; and

xi. Help the Company establish a mature production management system

16. As a condition of, and in consideration for, his employment with Gofo, Wang agreed to sign a "Mutual Non-Disclosure Agreement" (the "Agreement"). Wang signed a paper copy of the Agreement on December 2, 2024. Wang was paid an annual salary in exchange for his services and in compliance with the Agreement.

17. By signing the Agreement, Wang acknowledged and agreed "take all reasonable measures to protect the secrecy and avoid disclosure and unauthorized use of the Confidential Information."

18. Confidential Information, as defined in the Agreement, includes "any information (including, without limitation, any scientific, engineering, technical, commercial, financial, process, personnel or economic data or information, information about project-related costs, operating and maintenance history, and business and other plans) disclosed by [Gofo], directly or indirectly, in writing, orally or by inspection of tangible objects or of properties or sites (including without limitation documents, protypes, samples and its affiliates' plant and equipment)."

19. Wang also represented that he "shall not copy Confidential Information," and in Section 12 of the Agreement, agreed that Gofo could seek "injunctive relief in addition to all legal remedies" for any violation of the Agreement.

20. Finally, the Agreement between Gofo and Wang is "governed by the laws of the State of New York, without reference to conflict of laws principles," and it further provides that a New York court "shall have exclusive jurisdiction to resolve any disputes with respect to the…Confidential Information."

21. Wang was privy to and continues to be privy to Gofo's Confidential Information, including, but not limited to, commercial contracts containing proprietary pricing information and

bespoke service agreements; investment materials (including pitch decks and financial information); customer lists; integration details; vendor pricing and contracts; financial and strategic planning materials; and product roadmaps, go-to-market strategies, and competitive positioning materials.

22. Even though Wang was terminated from Gofo in June 2025, he continued to target Gofo's Confidential Information and sought the assistance of other Gofo employees, Yuyang Li and Cheng-Yun Kuo, to steal Gofo's Confidential Information.

23. Upon information and belief, Wang, through himself and his companies, Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc., directed Yuyang Li and Cheng-yun Kuo and other Gofo employees to download screenshots or documents of Gofo's Confidential Information and then to send it to the WeChat, email accounts, or other electronic databases of Wang himself or those of his companies.

24. Upon information and belief, in June 2026, Gofo discovered that Wang, through himself and his companies, Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc., had been openly selling Gofo's Confidential Information to competitors and third parties through the internet and other electronic communications.

25. Upon information and belief, Wang misrepresented to third parties that he was still the U.S. operations director at Gofo, and Wang, through himself and his companies (the Corporate Defendants), disclosed substantial Confidential Information of Gofo, including sales and costs data, pricing strategy, business strategy for expansion, metrics tracking unique to Gofo, quality control data, comparison studies, sorting technology, capacity, and framework, and overall market impressions and engagement.

26. Upon information and belief, Wang, through himself and his companies, (the Corporate Defendants), also leaked critical Confidential Information of Gofo, such as customer information, preferences, and lists, as well as strategies in dealing with competitors in the same industry.

27. Upon information and belief, when selling Gofo's Confidential Information through himself or his companies, Wang openly told competitors and third parties that he is taking a huge risk to disclose the Company's secrets, and that he would be subject to liability and damages to the Company if he was caught.

28. Upon information and belief, Wang also boasted that he had approximately 30 of Gofo's strategic plans and diagrams, which were all Company secrets and Confidential Information that Gofo closely guarded.

29. Upon information and belief, Wang and his companies, Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc., continue to receive large sums of monies from competitors and third parties in exchange for his illegal selling and dissemination of Gofo's Confidential Information.

**COUNT ONE**
**Violations of Defend Trade Secrets Act,**
**18 U.S.C. § 1836, et seq.**
**Against All Defendants**

30. Gofo hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

31. Gofo possesses valuable trade secrets within the meaning of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*., including, but not limited to, confidential

- commercial contracts containing proprietary pricing information and bespoke service agreements;
- investment materials (including pitch decks and financial information);

- customer lists;
- integration details;
- vendor pricing and contracts;
- financial and strategic planning materials; and
- product roadmaps, go-to-market strategies, and competitive positioning materials.

32. All of these materials are confidential, and much of this information is subject to agreements with confidentiality clauses.

33. Gofo's business is engaged in interstate commerce as many of its customers, clients, vendors, and investors are located throughout the country.

34. Further, Gofo has spent millions of dollars and countless hours developing these proprietary materials, which derive independent economic value from not being generally known or readily ascertainable by competitors, and which have been subject to reasonable efforts to maintain secrecy.

35. Gofo has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets.

36. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements.

37. Defendant misappropriated Gofo's trade secrets by selling the Company's information, including logistics routes, business strategies, market studies, and pricing, to competitors.

38. Defendants' misappropriation was undertaken knowingly and willfully with the intent to benefit himself and his companies (the Corporate Defendants).

39. Indeed, upon information and belief, Defendant's companies, Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc., received large sums of monies from competitors and third parties in exchange for Defendant's illegal selling and dissemination of Gofo's trade secrets. Defendants therefore profited from the sale of Gofo's trade secrets.

40. As a result of Defendants' actions, Gofo has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

41. Gofo is therefore entitled to injunctive relief barring Defendants from possessing, using, or disclosing its trade secrets. Gofo is also entitled to recover actual damages, punitive damages, and attorneys' fees under 18 U.S.C. § 1836(b)(3).

**COUNT TWO**
**(Common Law Misappropriation of Trade Secrets and Confidential Proprietary Information)**
**Against All Defendants**

42. Gofo hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

43. Gofo owns and possesses valuable trade secrets and confidential proprietary information, including but not limited to commercial contracts containing proprietary pricing information and bespoke service agreements, investment materials, customer lists, vendor contracts, internal communications, strategic planning materials, product roadmaps, business plans, integration details, financial information, and other confidential business and technical information.

44. Certain portions of the foregoing information constitute trade secrets under applicable law, while other portions constitute confidential and proprietary business information

that derive substantial value from not being publicly known and from being maintained in confidence.

45. The foregoing trade secrets and confidential proprietary information are not generally known to the public or Gofo's competitors, and provide Gofo with a competitive advantage in the marketplace.

46. Gofo has taken reasonable measures to maintain the secrecy and confidentiality of its trade secrets and confidential proprietary information, including through confidentiality agreements, access controls, role-based permissions, nondisclosure agreements, restricted repositories, security policies, and other measures described herein.

47. Defendant obtained access to Gofo's trade secrets and confidential proprietary information solely by virtue of his position as Director of Network Expansion and as a result of the trust and confidence placed in him by Gofo.

48. Defendant wrongfully acquired, copied, downloaded, retained, disclosed, transmitted, and/or used Gofo's trade secrets and confidential proprietary information without authorization and in violation of her contractual, fiduciary, and common-law obligations to Gofo.

49. Defendant's misconduct included selling Gofo's Confidential Information (including sales and costs data, pricing strategy, business strategy for expansion, metrics tracking, quality control, comparison studies, sorting technology, capacity, framework, and overall market impressions and engagement) to third party competitors.

50. In exchange for selling Gofo's Confidential Information to third parties, Defendant received monetary compensation paid to each of his three companies, Too Express NJ LLC, Tinggo Inc., and Copalith Group Inc. Defendants therefore profited from the sale of Gofo's Confidential Information.

51. Defendant knew or had reason to know that the information he acquired, retained, disclosed, transmitted, and/or used was confidential, proprietary, and/or trade-secret information belonging to Gofo and that he had a duty not to misuse such information and to return it upon termination of his employment.

52. To the extent any portion of the information misappropriated by Defendant is determined not to constitute a trade secret, such information nevertheless constitutes confidential and proprietary business information that Defendant had no right to retain, use, disclose, transmit, or exploit for his own benefit or the benefit of any third party.

53. Defendant's conduct was willful, wanton, and malicious, entitling Gofo to recover all damages available under New York law, including exemplary damages to the extent permitted by law.

54. Gofo has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendants from possessing, using, disclosing, transmitting, retaining, or benefiting from Gofo's trade secrets and confidential proprietary information and requiring the return and/or verified destruction of all such information in Defendants' possession, custody, or control.

**<u>COUNT THREE</u>**
**(Breach of Contract)**
**Against Wang**

55. Gofo hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

56. The Mutual Non-Disclosure Agreement (the "Agreement") signed by Wang is valid and enforceable.

57. Under Section 4 of the Agreement, Wang is prohibited from using or disclosing Confidential Information (including, without limitation, scientific, engineering, technical,

commercial, financial, process, personnel, or economic information related to Gofo, as specified in Section 2 of the Agreement) to third parties.

58. Under Section 5 of the Agreement, Wang agreed to "take all reasonable measures" to protect the secrecy of Confidential Information and avoid disclosure and unauthorized use of such information.

59. Under Section 6 of the Agreement, Wang's obligation to avoid disclosure and unauthorized use of Confidential Information remains until the Confidential Information at issue "becomes publicly known and made generally available;" to date, the Confidential Information disclosed to third parties has not become publicly known or made generally available.

60. By signing the Agreement, Wang agreed that any violation of the Agreement could entitle Gofo to seek "injunctive relief in addition to all legal remedies."

61. Wang breached Sections 4 and 5 of the Agreement by, at a minimum, selling Confidential Information to third parties.

62. Gofo has a legitimate business interest in enforcing the non-disclosure provisions of the Agreement because, *inter alia*, Wang possesses confidential information regarding Plaintiff's business – including Plaintiff's sales and promotional strategies– that third party competitors can use to undermine Plaintiff's business strategy and customer relationships.

63. The enforcement sought by Gofo does not pose an undue hardship on Wang, as Wang acknowledged that Gofo could seek all legal remedies for breach of his obligations under the Agreement.

64. Gofo fully performed their obligations under the Agreement.

65. As a direct and proximate result of Wang's breach of the Agreement, Gofo is entitled to actual damages in an amount to be determined at trial.

By reason of the foregoing, Gofo is entitled to recover damages, equitable relief, injunctive relief, costs, disbursements, and such other relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully request that judgment be made and entered against Defendants, and in favor of Plaintiff, as follows:

(a) Awarding compensatory damages and interest to Plaintiff in an amount to be determined at trial;

(b) Awarding punitive damages to Plaintiff for Defendants' willful, fraudulent, and malicious conduct;

(c) Awarding Plaintiff its costs and attorneys' fees incurred in connection with this litigation, pursuant to applicable federal and state statutes;

(d) Awarding Plaintiff such other further relief as the Court may deem just and proper.

Date: September 16, 2026
New York, New York

***/s/ Kevin K. Yam***

Kevin K. Yam
Joseph E. Field
Shreya Mantrala
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
212.583.9600
KYam@littler.com
JField@littler.com
SMantrala@littler.com

*Attorneys for Plaintiff Gofo, Inc.*